**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LENWOOD MASON,** | **CIVIL ACTION** |
|          **Petitioner,** | |
| | |
|    **v.** | |
| | |
| **JOHN WETZEL, *et al.*,** | **NO.  17-3759** |
|          **Respondents.** | |

## MEMORANDUM OPINION

Before the Court is Lenwood Mason's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.  Upon referral, the Magistrate Judge issued a Report and Recommendation to which Mason has filed counseled objections.  After *de novo* review, the Court will deny relief as to Mason's claims challenging his first-degree murder conviction.[1]

## I.  BACKGROUND

In 1994, Mason stabbed his girlfriend, Iona Jeffries, to death.  Two years later, he was convicted in state court of first-degree murder, burglary, and possessing an instrument of crime in connection with Jeffries' death.

The details of Mason's case are set forth at length in the Report and Recommendation. Relevant to the present Petition are the following facts:  In early 1994, Philadelphia Police Officers Terry Brown and Karen Moore encountered Mason and Jeffries when investigating a disturbance.  Brown noticed bruises on Jeffries and asked if she was okay.  She told him that Mason caused her injuries but that if Mason was arrested, he would kill her.  Brown did arrest Mason, who was then transported to the police station while Jeffries was taken to a hospital.

Upon his release from prison, Mason and Jeffries resumed their relationship.  Mason

---

[1] The parties have entered into a stipulation by which the Commonwealth agreed to the grant of habeas corpus relief as to Mason's death sentence, which stipulation was so-ordered by the Court.

testified at trial that the night before Jeffries' death, the two drank and smoked marijuana laced with phencyclidine ("PCP") at a local bar.  Jeffries then decided to go to a different club and asked someone to drive Mason home, as she did not want him to come with her.  Mason yelled at Jeffries "[y]ou want it like that?" and stormed out of the bar.

At approximately 9:30 a.m. the following morning, Mason banged on the door of Jeffries' mother's house, demanding to see Jeffries.  Jeffries' mother told Mason that he would have to wait to speak to her, at which point Mason forced the door open and went upstairs to Jeffries' bedroom.  Jeffries' mother called the police, grabbed a knife, and started toward Jeffries' room.  She saw Mason descending the stairs, and heard him say "I got her now."  She continued to the bedroom and found Jeffries on the floor, bleeding from multiple stab wounds.  Jeffries was pronounced dead shortly thereafter.  Mason surrendered to the police later that day.

At trial in the Philadelphia Court of Common Pleas, Mason took the stand.  He described the night prior to Jeffries' death, and how after he ingested the PCP-laced marijuana, "everything went blurry."  He testified that he had never used PCP before, and that he did not regain his senses until the following evening, when he was already in jail.  Mason's mother and brother also testified in his defense, stating that although they had seen Mason high in the past, they had never seen him in a state similar to the one he was in the morning of Jeffries' murder.

Mason was convicted, and the trial court held a penalty hearing.  During the hearing, Mason's counsel presented Dr. Allan Tepper, an expert in forensic and clinical psychology and a practicing criminal defense attorney.  Dr. Tepper had examined Mason on two occasions, and opined during the penalty hearing as to Mason's low IQ and other mitigating circumstances.  Following the hearing, the jury returned a verdict of death.

Represented by new counsel, Mason filed a direct appeal.  The Pennsylvania Supreme

Court unanimously affirmed the judgment of sentence, which became final on October 2, 2000, when the United States Supreme Court denied *certiorari*.  Mason then filed in the Court of Common Pleas a *pro se* petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat. Ann. §§ 9541-46.  Following the withdrawal of his initially-appointed counsel, the Federal Community Defender Office entered an appearance on Mason's behalf and filed an amended petition.  After several years of motion practice, the Common Pleas Court ordered an evidentiary hearing on the issue of whether trial counsel rendered ineffective assistance at the trial's penalty phase by failing to adequately investigate and present evidence of Mason's mental health condition and history of substance abuse.

The case was then assigned to a new judge, who presided over a five-day evidentiary hearing.  In addition to the testimony of his own trial counsel, direct appeal counsel, and family members, Mason presented the testimony of Dr. Tepper and two other retained experts: Dr. Robert Sadoff, an expert in forensic psychology, and Dr. Gerald Cooke, an expert in forensic neuropsychology.  Mason also presented the rebuttal testimony of Dr. Richard Restak, an expert in neurology.  Following post-hearing submissions and oral argument, the court denied postconviction relief.  Mason appealed and the Pennsylvania Supreme Court affirmed in part, remanding the suit on a limited question not relevant to the present matter.  *See Mason v. Commonwealth*, 130 A.3d 601, 653-71 (Pa. 2015).  On remand, the Common Pleas Court entered a judgment denying Mason's postconviction petition.  Mason filed a *pro se* appeal, and the Pennsylvania Supreme Court affirmed.  *See Commonwealth v. Mason*, 196 A.3d 125 (2018).

While Mason's second appeal was pending before the Pennsylvania Supreme Court, Mason filed the present federal habeas petition.

## II.      LEGAL STANDARDS

Upon receiving a report and recommendation on a habeas petition referred to a magistrate judge, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made . . . [and] . . . may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  Review in this case is governed by the following legal standards.

### A.  AEDPA

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petition for habeas corpus may be granted on behalf of a petitioner in custody pursuant to a state court judgment only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  For habeas relief to issue, the state court's decision must have: (1) been "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).  "Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence." *Werts v. Vaughn*, 228 F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).  "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

**B.  Exhaustion and Procedural Default**

Habeas petitioners are required to exhaust state court remedies before obtaining habeas

relief.  28 U.S.C. § 2254(b)(1)(A).  This "exhaustion requirement ensures that state courts have

the first opportunity to review federal constitutional challenges to state convictions and preserves

the role of state courts in protecting federally guaranteed rights."  *Caswell v. Ryan*, 953 F.2d 853,

857 (3d Cir. 1992).  To satisfy this requirement, a petitioner must have "fairly presented" the

merits of his federal claim "to the state courts in a manner that puts them on notice that a federal

claim is being asserted."  *McCandless v. Vaughn*, 172 F.3d 255, 260-61 (3d Cir. 1999).

Where the state courts refuse to review the merits of a claim due to an independent and

adequate state procedural rule, the claim is procedurally defaulted.  *See Coleman v. Thompson*,

501 U.S. 722, 750 (1991); *Rolan v. Coleman*, 680 F.3d 311, 317 (3d Cir. 2012).  Review of

defaulted claims is generally barred unless "the [petitioner] can demonstrate cause for the default

and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure

to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at

750.

If the court reaches the merits of a defaulted claim, review is *de novo*.  *Lark v. Sec'y Pa.*

*Dep't of Corr.*, 645 F.3d 596, 618 (3d Cir. 2011) ("[W]hen, as here, the state courts do not

adjudicate a claim on the merits, and that claim is presented properly to a federal court in a

petition for a writ of habeas corpus, the deferential standards of the AEDPA do not apply [and]

our review is entirely de novo.").

**C.  Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel, a petitioner must show that: (1) counsel's

performance was deficient; and (2) counsel's deficient performance caused the petitioner

prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). "Deficient performance" means that "counsel's representation fell below an objective standard of reasonableness" and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687-88. In reviewing counsel's performance, the court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

As to prejudice, the petitioner bears the burden of:

> demonstrat[ing] "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citations omitted). Thus, "counsel cannot be deemed ineffective for failing to raise a meritless claim." *Ross v. Dist. Attorney of the Cty. of Allegheny*, 672 F.3d 198, 211 n.9 (3d Cir. 2012) (quoting *Werts*, 228 F.3d at 202).

When the state courts have adjudicated and rejected a claim of ineffective assistance of counsel on the merits, AEDPA's review provisions apply and the question becomes "not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105; *see also id.* ("Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).").

6

### III.    DISCUSSION

Mason asserts three claims for habeas relief.  In Claim One, he asserts that his trial counsel was ineffective for failing to investigate and present available evidence to support the defense of voluntary intoxication/diminished capacity, and that his appellate counsel failed to adequately investigate and litigate this issue on appeal.  In Claim Two, he asserts that trial counsel was ineffective for failing to make a Confrontation Clause objection under the Sixth Amendment to certain testimony elicited by the Commonwealth during trial, and that his appellate counsel was ineffective in failing to raise this issue on appeal.  In Claim Three, Mason asserts that trial counsel was ineffective for failing to make a *Batson* objection to certain peremptory challenges exercised by the Commonwealth during jury selection, and that his appellate counsel was ineffective in failing to raise this issue on appeal.

The Magistrate recommended denying relief on all claims.  As to Claims Two and Three, the Magistrate found these claims procedurally defaulted and determined that this default could not be excused.  The Magistrate thus recommended dismissing these claims as unreviewable, without reaching the merits arguments briefed by Mason and the Commonwealth.  As to Claim One, the Magistrate found this claim exhausted and thus reviewable, but determined that the state court's adjudication of this claim was based on a reasonable determination of the facts and not contrary to federal law, such that Mason could not satisfy his burden under AEDPA for obtaining habeas relief.

Mason objects to the Magistrate's recommendation on two grounds.  First, he contends that the Magistrate misapplied the relevant law in determining that Claims Two and Three were defaulted.  Specifically, he objects to the Magistrate's conclusion that this procedural default could not be excused pursuant to the United States Supreme Court's decision in *Martinez v.*

*Ryan*, 566 U.S. 1 (2012).  Second, he argues that the Magistrate erred in finding that the state court's adjudication of Claim One was based on a reasonable determination of the facts.

Upon *de novo* review, the Court accepts the Magistrate's recommendation as to Claim One,[2] but will modify the Magistrate's recommendations as to Claims Two and Three as follows.

### A.  Claims Two and Three

Mason does not object to the Magistrate's finding that Claims Two and Three were procedurally defaulted, nor could he:  In addressing Mason's appeal of the Common Pleas Court's denial of his PCRA petition, the Pennsylvania Supreme Court refused to reach the merits of either claim, finding that neither was properly preserved by Mason's initial postconviction counsel.  *Mason*, 130 A.3d at 639, 640.  As noted, however, a procedural default may be excused where the petitioner demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law."  *Coleman*, 501 U.S. at 750.  Contrary to the Magistrate's recommendation, Mason contends that the ineffectiveness of his state postconviction counsel in failing to raise these claims provides cause to overcome their default under the Supreme Court's *Martinez* decision and its progeny.

"Ordinarily, attorney error committed by defense counsel during state postconviction proceedings is not 'cause to excuse a procedural default.'"  *Gonzalez v. Superintendent*

---

[2] With respect to Claim One, Mason argues that because the PCRA court did not hold an evidentiary hearing on whether his counsel rendered ineffective assistance by failing to investigate and present evidence supporting his diminished capacity defenses the Pennsylvania Supreme Court's findings as to this claim are unreasonable.

Specifically, he contends that because there was no evidentiary hearing, the record is unclear as to whether, in Dr. Tepper's view, Mason was capable of forming a specific intent to kill at the time of the offense.  Under AEDPA, a federal habeas court is required to give deference to the state court's factual findings, regardless of whether the state court has held an evidentiary hearing as to any specific issue.  *Rolan v. Vaughn*, 445 F.3d 671, 679 (3d Cir. 2006) (citing *Lambert v. Blackwell*, 387 F.3d 210, 237 (3d Cir. 2004)).  Nevertheless, "state fact-finding procedures may be relevant when deciding whether the [state court's] determination was 'reasonable' or whether a petitioner has adequately rebutted a fact."  *Id.*  Here, however, the record on this issue was sufficiently developed to support the Pennsylvania Supreme Court's finding that Dr. Tepper believed Mason able to form a specific intent to kill, and Mason presents no evidence which would rebut that finding.

*Houtzdale SCI*, 802 F. App'x 45, 47-48 (3d Cir. 2020) (quoting *Davila v. Davis*, --- U.S. ----, 137 S. Ct. 2058, 2065 (2017)).  In *Martinez*, however, the Supreme Court recognized a narrow equitable exception to this general rule, holding that when state law requires a defendant to defer claims of ineffective assistance of trial counsel to state postconviction review, a claim of ineffective assistance of state postconviction counsel for failing to raise a "substantial" trial counsel ineffective assistance claim might excuse the default of that claim.  *Martinez*, 566 U.S. at 17.

In *Trevino v. Thaler*, 569 U.S. 413 (2013), the Supreme Court applied *Martinez* to Texas's appellate review system and concluded that the *Martinez* exception also applies when a state's appellate process makes it "virtually impossible" in practice, if not in theory, to litigate claims of ineffective assistance of trial counsel while still on direct appeal.  *Id.* at 417.  As the Third Circuit has explained:

> Texas law, at issue in *Trevino,* ostensibly permitted (though it did not require) criminal defendants to raise ineffective assistance of trial counsel claims on direct appeal.  In practice, however, Texas' criminal justice system "[did] not offer most defendants a meaningful opportunity" to do so.  As the Texas courts themselves had observed, trial records often lacked information necessary to substantiate ineffective assistance of trial counsel claims, and motion filing deadlines, coupled with the lack of readily available transcripts, generally precluded raising an ineffective assistance claim in a post-trial motion.  Moreover, the Texas courts had invited, and even directed, defendants to wait to pursue such claims until collateral review.  The Court "conclude[d] that where, as [in Texas], state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal, [the] holding in *Martinez* applies."

*Cox v. Horn*, 757 F.3d 113, 119-20 (3d Cir. 2014) (alterations in original) (citations omitted).

In recommending that Claims Two and Three be dismissed as procedurally defaulted, the Magistrate noted that Mason's direct appeal took place prior to the Pennsylvania Supreme Court's decision in *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002), which found that "as a

general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Id.* at 738.  Prior to *Grant*, Pennsylvania law generally required that claims of ineffective assistance of trial counsel be raised at the first opportunity that trial counsel was replaced.  *See Commonwealth v. Hubbard*, 372 A.2d 687, 695 (Pa. 1977).  Mason was appointed a new attorney on direct appeal, and thus should have presented his ineffective assistance claims at that time.  *Martinez*, however, applies only when the postconviction collateral review process was the first opportunity for a petitioner to raise claims of ineffective assistance.  *See Martinez*, 566 U.S. at 17.  Because Mason was not required to defer his ineffective assistance claims until collateral review, the Magistrate determined that the *Martinez* exception could not apply.

Mason, on the other hand, contends that the pre-*Grant* criminal justice system in Pennsylvania resembled that of the Texas system considered by the Supreme Court in *Trevino*. He argues that while it was theoretically possible to raise ineffectiveness claims on direct appeal, the practicalities of the direct appeal process did not allow for a meaningful opportunity to develop extra-record claims of trial counsel ineffectiveness.  *See, e.g.*, *Commonwealth v. Turner*, 365 A.2d 847, 849 (Pa. 1976) ("The problem in this case, as in most cases where the claim of ineffective assistance of counsel is raised on direct appeal, is that we have before us no record of any hearing at which is delineated trial counsel's reasons for taking the steps later challenged.").

The Third Circuit has recently suggested—albeit in a nonprecedential decision—that "the design or operation of Pennsylvania's pre-*Grant* regime did not likely deprive a typical defendant of a meaningful opportunity to raise an ineffective-assistance-of-trial-counsel claim." *Gonzalez*, 802 F. App'x at 48.  Nevertheless, in responding to Mason's objections, the Commonwealth concedes "that whether *Martinez* applies to Mason's claims presents a closer question than the merits."  *Compare, e.g.*, *White v. Warden, Ross Corr. Inst.*, 940 F.3d 270, 277-

78 (6th Cir. 2019) (*Martinez* can provide cause to overcome defaults arising from failure to raise claims on direct appeal in Ohio); *Brown v. Brown*, 847 F.3d 502, 510-13 (7th Cir. 2017) (same as to Indiana); *Runningeagle v. Ryan*, 825 F.3d 970, 980-82 (9th Cir. 2016) (same as to Arizona); *Sutton v. Carpenter*, 745 F.3d 787, 792-95 (6th Cir. 2014) (same as to Tennessee), *with Pavatt v. Carpenter*, 928 F.3d 906, 934 (10th Cir. 2019) (en banc) (*Martinez* does not provide cause to overcome defaults arising from failure to raise claims on direct appeal in Oklahoma); *Crutchfield v. Dennison*, 910 F.3d 968, 976-78 (7th Cir. 2018) (same as to Illinois); *Lee v. Corsini*, 777 F.3d 46, 60-61 (1st Cir. 2015) (same as to Massachusetts).  It therefore requests that the Court bypass the issue of default and instead proceed directly to the merits of Claims Two and Three.

"An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  Because the Court agrees with the Commonwealth that Claims Two and Three are meritless, these claims will be denied on that basis and, because the government has affirmatively waived the issue of default, without a determination as to whether Mason can overcome their default under *Martinez* and *Trevino*.

### 1.  Claim Two

In Claim Two, Mason contends that trial and direct appeal counsel were ineffective for failing to object to certain testimony elicited by the Commonwealth during trial and for failing to raise this issue on appeal.  This claim concerns the testimony of Officer Terry Brown, who, in 1994, arrested Mason for assaulting Jeffries.  Brown testified as follows:

> [BROWN]:  I spoke with the female, asked her was she okay and I asked her if she wanted to press charges, at which time she was very unsure and I said, well, he's under arrest anyway for what I see and from what you stated, he's under arrest. She—
>
> [PROSECUTOR]:  What—go ahead.

11

[BROWN]:  At which time she says if you place him under arrest he's going to kill me.

Mason contends that Brown's testimony constitutes hearsay, such that its admission violated his rights under the Sixth Amendment's Confrontation Clause.

The Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him."  U.S. Const. amend VI.  As the parties acknowledge, there are two Confrontation Clause precedents governing Mason's claim.  The first is the precedent in place at the time of Mason's trial, *Ohio v. Roberts*, 448 U.S. 56 (1980), in which the Supreme Court held that "an absent witness's hearsay statement could be introduced against a criminal defendant only if the witness was unavailable at trial and the statement bore certain 'indicia of reliability,' either by 'fall[ing] within a firmly rooted hearsay exception" or by showing 'particularized guarantees of trustworthiness.'"  *United States v. Berrios*, 676 F.3d 118, 125 (3d Cir. 2012) (alteration in original) (quoting *Roberts*, 448 U.S. at 66).  The second is the precedent currently governing Confrontation Clause claims.  In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court partially abrogated *Roberts*, adopting instead "a per se rule that where *testimonial* hearsay is concerned and the declarant is absent from trial, the Confrontation Clause requires that the witness be unavailable and that the defendant have had a prior opportunity for cross-examination."  *Berrios*, 676 F.3d at 125.

As discussed, to succeed on his ineffective assistance claim, Mason must show that his counsel's performance was deficient and that this deficient performance caused him prejudice. *Richter*, 562 U.S. at 104.  The adequacy of counsel's performance is judged by the law in existence at the time of the alleged deficient performance.  *See Sistrunk v. Vaughn*, 96 F.3d 666, 671-72 (3d Cir. 1996) (noting general rule that counsel cannot be considered ineffective for

failing to predict changes in the law).  Prejudice, however, is judged by the law in existence at the time of habeas review.  *See Lockhart v. Fretwell*, 506 U.S. 364, 372-73 (1993) (failure to obtain relief in accordance with then-existing, but subsequently-overruled, precedent does not constitute constitutional "prejudice").  Thus, Mason's contention that his counsel's performance was deficient will be measured by the Confrontation Clause jurisprudence set forth in *Roberts*.  If he meets his burden of establishing deficient performance, his contention that he suffered prejudice as a result of his counsel's performance will be measured by the Supreme Court's current understanding of the Confrontation Clause as articulated in *Crawford*.

As to whether counsel's performance was deficient, Mason suggests that he would have had a meritorious Confrontation Clause objection at the time of trial because Brown's testimony that Jeffries said "if you place him under arrest he's going to kill me" constituted an out-of-court statement offered to prove the truth of the matter asserted and lacked sufficient "indicia of reliability" to justify admittance.  Under *Roberts*, "[r]eliability [could] be inferred without more in a case where the evidence [fell] within a firmly rooted hearsay exception."  *Roberts*, 448 U.S. at 66; *Bourjaily v. United States*, 483 U.S. 171, 182-83 (1987).  Mason argues that Brown's testimony does not fall under a hearsay exception, such that its admittance was objectionable.

Initially, it is difficult to see how Brown's testimony could have been offered for the truth of the assertion "if you place him under arrest he's going to kill me," which is something no person could have known and asserted as a fact.  Instead, Mason appears to be suggesting that the testimony was offered for the truth of the implied assertion that Jeffries feared she would be killed if Mason were arrested.  The Third Circuit has "held that statements containing express assertions not offered for their truth may contain implied assertions that qualify as hearsay because the truth of the implied assertions is at issue and relevant to guilt."  *United States v.*

*McGlory*, 968 F.2d 309, 332 (3d Cir. 1992) (citing *United States v. Reynolds*, 715 F.2d 99, 103 (3d Cir. 1983)).  That court thus "disfavor[s] the admission of statements which are not technically admitted for the truth of the matter asserted, whenever the matter asserted, without regard to its truth value, implies that the defendant is guilty of the crime charged." *Id.*  Here, Mason contends that evidence that Jeffries feared she would be killed if Mason were arrested went directly to the contested issue of Mason's specific intent to kill.

Even assuming Mason's position is correct, under the precedent in place at the time of Mason's trial, the admission of hearsay testimony did not violate the Confrontation Clause where the testimony fell under an established hearsay exception.  *See Roberts*, 448 U.S. at 66.  In this case, Jeffries' statement was admissible as an excited utterance, that is, "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."  Fed. R. Evid. 803(2); Pa. R. Evid. 803(2); *see also Kontakis v. Beyer*, 19 F.3d 110, 119 (3d Cir. 1994) ("excited utterance" hearsay exception is "firmly rooted" and satisfied Confrontation Clause under then-governing *Roberts*).  "The basis for the 'excited utterance' exception . . . is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy . . . ." *Idaho v. Wright*, 497 U.S. 805, 820 (1990).

Here, Jeffries had just been informed by Brown that the latter would be arresting Mason regardless of whether Jeffries wanted to press charges, to which Jeffries responded that if Brown did arrest Mason, Mason would kill Jeffries.  The circumstances surrounding Jeffries' statement sufficiently demonstrate that she was under the stress of the excitement caused by Brown's decision to arrest Mason when she issued her statement; indeed, the statement relates directly to

Brown's decision to arrest Mason and was issued by Jeffries immediately upon learning of Brown's decision.  Because Brown's testimony was admissible under the excited utterance exception to the hearsay rule, Mason fails to meet his burden of showing that his trial counsel's failure to object to this testimony and his direct appeal counsel's failure to raise this issue on appeal "fell below an objective standard of reasonableness."  *See Strickland*, 466 U.S. at 687.

Thus, Claim Two will be denied.  Because Mason fails to establish that trial counsel's performance was deficient, the prejudice prong of the *Strickland* analysis need not be addressed.

### 2. *Claim Three*

In Claim Three, Mason claims that trial counsel rendered ineffective assistance by failing to object during the jury selection process to peremptory challenges exercised by the prosecution which, according to Mason, demonstrated that the prosecutor was intentionally discriminating against female venire members on the basis of their gender.[3]

The Equal Protection Clause bars the use of peremptory challenges against potential jurors on the basis of race, *Batson v. Kentucky*, 476 U.S. 79, 88-89 (1986), or gender, *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 141-42 (1994).  To succeed on Claim Three, Mason must, as discussed above, "show both that his counsel provided deficient assistance and that there was prejudice as a result."  *Richter*, 562 U.S. at 104.  With respect to the first prong, counsel's performance could only be deficient if there was a reasonable likelihood that his proposed *Batson* objection to the Commonwealth's use of its peremptory challenges would have been sustained.

---

[3] At times, Mason appears to frame Claim Three as a substantive *Batson* claim, rather than a claim of ineffective assistance arising from trial counsel's failure to raise a *Batson* challenge during jury selection.  However, "in failing to raise an objection at trial to the prosecutor's use of peremptory challenges, [Mason] forfeited his right to raise a *Batson* claim on appeal."  *Clausell v. Sherrer*, 594 F.3d 191, 194-95 (3d Cir. 2010) (citing *Lewis v. Horn*, 581 F.3d 92, 102 (3d Cir. 2009)).  Thus, Mason's claim concerning the jury selection process is one of ineffective assistance of counsel.

To state a *Batson* claim, the party asserting the claim must first establish a prima facie case of purposeful discrimination. "Establishment of a prima facie case requires the defendant to show that 'the totality of the relevant facts gives rise to an inference of discriminatory purpose.'" *Williams v. Beard*, 637 F.3d 195, 214 (3d Cir. 2011) (quoting *Johnson v. California*, 545 U.S. 162, 168 (2005)). While "[t]his step is not intended to be particularly onerous," the Third Circuit has "emphasized that 'peremptory strikes are presumptively valid' and 'need not be supported by any reason' so long as they are not 'exercised on an unconstitutional basis,'" such as gender. *Id.* (quoting *United States v. DeJesus*, 347 F.3d 500, 505 (3d Cir. 2003)). The Supreme Court has identified "a 'pattern' of strikes against [female] jurors included in the particular venire" and "the prosecutor's questions and statements during voir dire examination and in exercising his challenges" as relevant to whether the defendant has established a prima facie case of discrimination. *See Batson*, 476 U.S. at 96-97; s*ee also Copenhefer v. Horn*, 696 F.3d 377, 391 (3d Cir. 2012) (relevant considerations at first step of *Batson* analysis are "(1) the number of [female] members in the panel; (2) the nature of the crime; (3) the [gender] of the defendant and the victim (4) a pattern of strikes against [females]; and (5) the questions and statements during the voir dire" (alterations in original) (quoting *Holloway v. Horn*, 355 F.3d 707, 722 (3d Cir. 2004))). If a prima facie case is established, the burden shifts to the user of the challenged peremptory strikes to provide a gender-neutral explanation for its conduct. *See Batson*, 476 U.S. at 97. The court then determines whether purposeful discrimination has been established by a preponderance of the evidence. *Id.* at 98.

Here, Mason suggests that statistical evidence shows a pattern of discrimination sufficient to establish a prima facie case of intentional gender discrimination, such that his counsel was

deficient for failing to raise a *Batson* objection at trial.[4]  The Third Circuit has found that such statistical evidence is relevant at the first stage of the *Batson* inquiry.  *See Abu-Jamal v. Horn*, 520 F.3d 272, 290 (3d Cir. 2008).  Particularly relevant are the prosecution's strike and exclusion rates:  The strike rate "is computed by comparing the number of peremptory strikes the prosecutor used to remove [female] potential jurors with the prosecutor's total number of peremptory strikes exercised," whereas the exclusion rate "is calculated by comparing the percentage of exercised challenges used against [female] potential jurors with the percentage of [female] potential jurors known to be in the venire."  *Id.*

Mason states that the prosecutor exercised 14 of his 18 peremptory strikes against women, accepting 9 men and striking 4 and accepting 10 women and striking 14.  Thus, the prosecution struck female potential jurors at a rate of 78%.  He further states that the prosecutor had the chance to strike 24 women and struck 14, for an exclusion rate of 58.3%.  By contrast, he states that the prosecutor had the chance to strike 13 men and struck 4, for an exclusion rate of 30.7%.  Even assuming the accuracy of these figures, Mason fails to provide any authority finding a prima facie case of intentional discrimination under similar circumstances.  *See, e.g.*, *Williams*, 637 F.3d at 215 (finding prima facie showing where the venire was less than 40% black and black jurors were struck at a rate of 87.5%); *Howard v. Horn*, 56 F. Supp.3d 709, 723 (E.D. Pa. 2014) (exclusion rate of 58.3% insufficient to raise an inference of discrimination).

It is, moreover, undisputed that the prosecutor accepted more female venire members than male venire members and that a majority—namely, 8 out of 12—of the jurors who served on Mason's jury were women.  *See, e.g.*, *Copenhefer*, 696 F.3d at 391 (no inference of

---

[4] Mason also notes that a "review of the qualifications of the struck women" establishes a prima facie case of gender discrimination, explaining that "[n]either [the jurors'] brief account of their life circumstances, nor their responses in voir dire gave any apparent non-gender grounds for the strike."  However, whether there is a neutral explanation for the prosecution's exercise of its peremptory challenges is not relevant at the first step of the *Batson* analysis.

discrimination where "there was an equal number of each gender on the jury that actually deliberated"); *Bond v. Beard*, 539 F.3d 256, 269 (3d Cir. 2008) (inference of intentional discrimination undermined where black jurors ultimately formed a larger percentage of the jury than they did of the venire panel).  Considering "the totality of the relevant facts," *see Johnson*, 545 U.S. at 168, Mason's statistical evidence is insufficient to make out a prima facie *Batson* claim.  And because the record does not indicate that a *Batson* challenge was likely to succeed, Mason fails to meet his *Strickland* burden of establishing that his trial counsel was deficient for failing to make a *Batson* objection or that his direct appeal counsel was deficient for failing to raise this issue on appeal.[5]  *See Johnson v. Tennis*, 549 F.3d 296, 301 (3d Cir. 2008).  Thus, Claim Three will also be denied.[6]

An appropriate order follows.

August 20, 2021

BY THE COURT:

/s/Wendy Beetlestone, J.

_____

**WENDY BEETLESTONE, J.**

---

[5] Mason's reliance on a declaration of trial counsel obtained by Mason's postconviction counsel is misplaced.  He characterizes trial counsel as able to "offer no reason for failing to raise this claim," implying that counsel may have thought there was a potentially-meritorious *Batson* claim to raise.  This characterization misreads the declaration, which states that trial counsel did not remember "any issues of race and gender discrimination" arising during jury selection.

[6] Mason contends that this Court cannot resolve his claims without holding an evidentiary hearing.  "[A] district court is permitted to hold an evidentiary hearing on a claim asserted in a § 2254 petition so long as such a hearing is not barred by 28 U.S.C. § 2254(e)(2)."  *Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010).  "Under that section, a habeas court is barred from holding the evidentiary hearing unless the petitioner was diligent in his attempt to develop a factual basis for his claim in the state court proceedings, or the petitioner satisfies the criteria set forth in § 2254(e)(2)(A) and (B)."  *Id.* (citation and footnote omitted).  Otherwise, the district court has discretion to decide whether to hold a hearing.  *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007).  In exercising this discretion, the court "must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Id.* at 474.  "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Id.* Because the record in this case precludes habeas relief, an evidentiary hearing is unnecessary.